Foster Nostrand *et al. versus* Elihu Atwood
*et al.* and Trustees.

Where an assignment was made by an insolvent debtor, previously to *St.* 1836, *c.* 238, in trust for the payment of his debts, and the claims of the creditors preferred in the assignment, who had become parties thereto, exceeded the value of the property assigned, it was *held*, that it was not competent for an unpreferred creditor, who had not become a party to the assignment, to object to its validity, on the ground that it required of the creditors becoming parties thereto a release in full, without regard to the amount of the dividend, or on the ground, that a life estate only passed thereby, in the real estate of which the assignors were seised in fee.

This was an appeal from a judgment of the Common Pleas, discharging the trustees upon their answers.

By the answers it appeared, that on the 5th of February, 1836, Lester, Atwood & Race, who were in partnership, assigned to the trustees, by an indenture of three parts, all their partnership goods, wares and merchandise, notes, books of accounts, and all claims and demands whatsoever ; also all their certain real estate conveyed by J. and E. Chadwick to Lester, Atwood & Race, to have and to hold to the trustees and their assigns, and to the survivors of them, and to the executors, administrators and assigns of such survivor ; upon the trust to sell the property and collect the debts, and to pay, in the first place, certain preferred creditors, provided they became parties to the assignment, and then to divide the residue of the property among such other creditors of the assignors, as should become parties ; that by the terms of the assignment, the creditors executing it severally released their claims against the assignors. It also appeared, that the amount due to the preferred creditors, who had executed the assignment previously to the service of the writ on the trustees in this case, exceeded the amount of the property assigned, by the sum of $ 3271·66.

The plaintiffs, who were not on the list of the preferred creditors, contended, that the assignment was void in respect to unpreferred creditors, inasmuch as it required, as a condition of becoming a party to the assignment, that the creditor should make an absolute release, and the property assigned was all appropriated to the payment of the claims of the preferred

creditors ; and that it was also void on the ground, that prop-
erty was reserved for the benefit of the assignors.

*Byington,* for the plaintiffs.  By the answers of the trustees,
it appears that the property assigned by the defendants is insuf-
ficient to pay the creditors of the first class ; of course those
of the second class will get nothing.  An assignment by an in-
solvent debtor, for the benefit of all his creditors, is void, if it
requires, as a condition upon which a creditor may become a
party, *that he shall release his whole debt for a partial divi-
dend.*    *Gorer* v. *Wakeman,* 11 Wendell, 187 ; *Ingraham* v.
*Wheeler,* 6 Connect. R. 277 ; *Lord* v. *Brig Watchman,* 8
Am. Jurist, 284 ; *Brashear* v. *West,* 7 Peters, 608.

In *Borden* v. *Sumner,* 4 Pick. 265, *Parker* C. J. speaks of
this question as not having been decided in this Court ; and in
several subsequent cases, in which questions arose upon assign-
ments containing stipulations for a release, this question was
not raised.    *Andrews* v. *Ludlow,* 5 Pick. 28 ; *Lupton* v. *Cut-
ter,* 8 Pick. 298 ; *Gloucester Bank* v. *Worcester,* 10 Pick.
529 ; *American Bank* v. *Doolittle,* 14 Pick. 123.

Whatever may be the opinion of the Court upon the general
question, this assignment will be pronounced void as to a dis-
senting creditor.  It professes to be made for the benefit of all,
and after paying a few creditors in full, to divide the *rest and
residue* among all the unpreferred creditors, and yet takes care
to provide for the payment of so many in full as to absorb all
the property.  In a word, by a false pretence of doing a benefit
to the general creditor, it induces him to release the insolvents
and their joint debtors, and then does not pay him a cent.   It
is true, in this case, the preferred creditors had become parties
to the assignment at the time of the service of the writ, and so
there was no surplus ; but we contend here, that the assign-
ment was wholly void.   We are to look at it, its objects and
purposes, as it is executed only by the debtor and the trustee.
The subsequent acceptance of its terms by creditors, cannot
make that good which in its original creation was void for fraud.
The original contract of the debtor is to pay in full.   But here
he conveys away his property ; he locks it up, at least the real
estate and the choses in action, by an assignment, and then in-
vites all his creditors around him, and says to come, he will

pay them a dividend, but not unless they will release all the
debt ; and to others he falsely promises a dividend, gets them
to discharge their claims together, and then sends them empty
away.   The creditor, all creditors, are hindered, and all prop-
erty is hindered from being applied to pay debts, until the
creditor will accept terms in violation of the original contract.
It is not a free, fair offer ; it is compulsion that makes it for
the interest of a creditor to receive less than is his due.   Sup-
pose a case of an assignment of property that could not be
reached by the trustee process, and offering so small a dividend
that no creditor would accept it, would it be good ?   Clearly
not.   Then certainly it could not be made so, because the fears
of some creditors might induce them to accept its harsh terms.

To make an assignment good, not only must the debtor's
property be actually appropriated to the payment of his debts,
but it must be thus appropriated on no harsher condition than
one requiring the creditor to discharge so much of his demand
as is paid.   If this be not so, most certainly an assignment
which requires a release, and yet pays no dividend, cannot be
upheld.

This assignment is void also, because it does not convey all
the property of the debtors.  *Harris* v.  *Sumner*, 2 Pick. 129 ;
*Seaving* v.  *Brinkerhoof*, 5 Johns. Ch. R. 329.   A life estate
only in the realty is conveyed.   The *habendum* is, to the
grantees and their assigns ; it should have been, to them, their
*heirs* and assigns.

*Sumner*, for the defendants, cited *Widgery* v. *Haskell*, 5
Mass. R. 144 ; *Hatch* v. *Smith*, 5 Mass. R. 42 ; *Stevens* v.
*Bell*, 6 Mass. R. 339 ; *Thomas* v. *Goodwin*, 12 Mass. R.
140 ; *Haven* v. *Richardson*, 5 N. Hamp. R. 113 ; *Fox* v.
*Adams*, 5 Greenleaf, 245 ; *Lippincott* v. *Barker*, 2 Binney,
174 ; *Halsey* v. *Fairbanks*, 4 Mason, 206.

DEWEY, J. delivered the opinion of the Court.  The ques-
tion in this case arises upon the validity of the assignment.   If
it was valid and effectual in law to pass the property to the as-
signees, their title must prevail, and they will be discharged as
trustees in the present suit.

To the validity of this assignment two objections are made.
1. That it contains a stipulation for a release, by all the credi-

*Nostrand*
*v.*
*Atwood.*

*Sept.* 22d

tors who may become parties to it, of all their demands against the assignors ; and this, it is alleged, operates compulsorily upon the creditors, and prescribes such conditions for the benefit of the assignors as will render the whole assignment fraudulent and void in law : 2. That all the property of the assignors was not conveyed to their assignees.

Upon the first point, many authorities were cited by the counsel for the plaintiffs, which show that this question has been one elsewhere much litigated, and that the result has been a conflict of opinions in the courts of the different States, in reference to it. In the view we have taken of the present case, it is wholly unnecessary to consider particularly these various adjudications, or to pronounce any opinion upon the abstract question of the effect of the introduction into an assignment, of a stipulation for a release by the creditors who become parties to it, in a case where such a stipulation might be prejudicial to a creditor indisposed to assent thereto, and who might thus be deprived of receiving his share of the fruits of the assignment.

Our system in relation to assignments by insolvent debtors is doubtless an imperfect one ; and the legal principles in relation to it are somewhat peculiar to this Commonwealth. It has ever been the policy of our laws to hold all the property of the debtor as a fund to be appropriated to the payment of his debts ; and by no conveyance in trust can he divert it from this purpose, or secure any part of it to himself. But it has been equally a part of our system, that this property may be applied to the payment of any particular debt or debts in exclusion of others ; and this may be effected either by proceeding, on the part of the creditor, by attachment, or the debtor may prefer one creditor to another by payment of his debt in money, or by a conveyance of so much of his real or personal property as will be adequate to the discharge of the debt, or the transfer may be by way of pledge, mortgage, or a conveyance to a third person in trust for the creditor, if done with his consent.

The doctrine has uniformly been, as regards such transfers in trust, that where there were proper parties and a valuable consideration arising from the indebtedness of the assignor, and the creditors assented to the conveyance, the transfer would be

effec ual, and the property placed beyond the reach of the trustee process, unless where it might be avoided by a stipulation reserving a portion of the property conveyed, for the benefit of the assignor, or by showing some fraudulent intent.

It is equally well settled, that, as respects creditors who have not become parties to a conveyance in trust, by assenting thereto, an attaching creditor will have the priority. But wherever the amount of debts due to the assenting creditors is equal to or exceeds the whole property assigned, the trustee process, as well as any other mode of attachment, becomes entirely ineffectual. There is nothing for it to operate upon, the property having been appropriated to its legitimate purpose, the discharge of the debts of the assignor ; and though a preference is thus made between different creditors, it is no more injurious to the creditor who is without security, than if the same amount of property had been conveyed by pledge or taken by attachment.

The legal principles which have been stated, are fully recognized in various adjudications of this Court. I will only refer to the more recent cases. *Russell* v. *Woodward*, 10 Pick. 412 ; *Bradford* v. *Tappan*, 11 Pick. 76 ; *Foster* v. *Saco Manufacturing Co.* 12 Pick. 453 ; *Everett* v. *Walcott*, 15 Pick. 94.

By the answer of the trustees it appears, that the whole amount of debts due to preferred creditors who have accepted this assignment, is $ 19,982·47, and the whole real and personal estate holden by them under the assignment, amounts only to $ 16,710·81, leaving an excess of debts over the whole property conveyed, of $ 3,271·66, without making any deductions for so much of the property as could not be reached by this process, as the real estate, book debts, &c. It will be readily seen, therefore, that, in the present case, the stipulation for a release, was one wholly immaterial to the rights of the plaintiffs or any other creditors not named in the first class. There was no property transferred for their benefit. The creditors who had prior rights have a lien on the whole to their exclusive use. Those who have an interest in the property assigned are satisfied with the terms of the assignment, having voluntarily accepted them. The plaintiffs are not compelled

to execute a release of their debt ; and their refusal to accept what they call onerous terms, does not deprive them of any security. It is the same thing to them as if the stipulation for a release had not been made a part of the assignment. The question then arises, can a person having no interest in the property conveyed, question the validity of the conveyance because the purchaser or creditor has taken it upon terms too onerous to himself ? We think clearly not. That debts to the amount of the property conveyed should be charged upon it with the assent of creditors, that there should be no reservation of any part of the property for the benefit of the debtor, and, generally, that the transaction be *bonâ fide*, are holden necessary prerequisites to place the property beyond reach of the trustee process ; but where all these circumstances do exist, it ceases to be liable for other debts of the assignor.

The second question raised by the counsel for the plaintiffs, was, whether by the terms of the assignment the assignees hold an estate in fee, or a life estate, in the real estate, leaving the reversion in the assignor ; if the latter, it is contended that it renders the conveyance void, and that it is substantially a reservation for the benefit of the assignor. We have not found it necessary to decide this question ; for we hold, that this objection to the assignment, if it exist, cannot be taken by the plaintiffs. If any exception could be taken for this cause, it must be by those who have an interest in the assignment ; those who as preferred creditors are entitled to share in the proceeds of the property assigned, and who, by accepting this in full discharge of their debts, are precluded from resorting to any property not transferred to the assignees. As has been before shown, the plaintiff has no real interest in the assignment ; and the creditors holding under it are content with the provisions of it. Why should the plaintiffs complain, that a fund has been left unapplied, to which they may resort directly by the common process of attachment ? Such an objection from such a source, cannot be sustained.

Upon the whole matter, therefore, the Court are clearly of opinion, that the trustees must be discharged.

It may be proper to remark, that this opinion and the legal principles above stated, are adapted to the state of the law

when the present assignment was executed, which was prior to the statute of 1836, *c.* 238, introducing many new provisions as to future assignments.